**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| GREGORY HUMPHREY,<br><br>Plaintiff,<br><br>v.<br><br>JAMES MOODY, ASHLEY KERN and RODNEY FOULKS,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CASE NO:<br>7:24-CV-6 (WLS) |

**ORDER**

Defendants move for summary judgment. (Doc. 23) ("the Motion"). After review, the Motion is **GRANTED**, in part, and **DENIED**, in part.

## I. RELEVANT PROCEDURAL BACKGROUND

Plaintiff Gregory Humphrey filed suit against James Moody, Ashley Kern, and Rodney Foulks on January 22, 2024. (Doc. 1). Defendants moved for summary judgment (Doc. 23), Plaintiff Responded (Doc. 27), and Defendants Replied. (Doc. 32). Meanwhile Plaintiff filed a Motion for Spoliation Sanctions. (Doc. 31). Defendants Responded (Doc. 36), as did non-party the Georgia Department of Corrections (Doc. 37), and Plaintiff Replied. (Doc. 40). On July 7, 2026, the Court held a hearing on the Motion. (Doc. 43). On August 19, 2026, the Court denied Plaintiff's Motion for Spoliation Sanctions, while keeping open the possibility that a factfinder may eventually consider and weight the loss of video evidence that gave rise to that motion while determining facts at trial. (Doc. 45). The Motion for Summary Judgment (Doc. 23) being fully briefed, and the ancillary Motion for Spoliation Sanctions decided, the Motion is ripe for ruling.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). [1]

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "'A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.'" *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by citing to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by demonstrating that the nonmoving party has failed to present evidence in support of an element of its case on

[1] Local Rule 56 requires the movant for summary judgment to attach to the motion a separate statement of the material facts about which the movant contends there is no genuine dispute. M.D. Ga. L.R. 56. The respondent shall attach to its response a separate statement of material facts to which respondent claims there exists a genuine dispute. *Id.* The respondent shall also respond to each of the movant's numbered material facts. *Id.* Here, both Parties complied with Local Rule 56.

which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322–24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation marks omitted). To avoid summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Matsushita*, 475 U.S. at 587–88; *Allen,* 121 F.3d at 646. Yet the Court must grant summary judgment if there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## III. FACTUAL BACKGROUND

Plaintiff is a former inmate who was in custody of the Georgia Department of Corrections and housed in the G-2 dormitory at Valdosta State Prison ("VSP").[2] (Doc. 23-1 ¶ 1). Defendant James Moody was a correctional officer II at VSP and had worked for about a year, typically working night shifts. (*Id.* ¶ 2). Defendant Ashley Kern was employed as the shift lieutenant at VSP and was not assigned to a single building during her shift. (*Id.* ¶ 3). Defendant Foulks was employed as the night shift unit manager at VSP. (*Id.* ¶ 4). In this role

[2] As an initial matter, Defendants argue that Plaintiff has tried to amend his complaint in his Response. (Doc. 32 at 2). Plaintiff's Complaint alleged that the three Defendants subjectively knew that the three armed attackers were roaming the dorm, that the risk was elevated by Defendants' failure to properly do their rounds, and that they failed to intervene to stop the attack. (Doc. 1 ¶¶ 31–39). Plaintiff appears to add new allegations and theories of liability that were not present in his Complaint, specifically that there was a generalized risk of harm because of the mentally unstable nature of the inmates, the Defendants' failure to do rounds and other duties was the but for cause of Plaintiff's injuries. (Doc. 27 at 15–16). In other words, Plaintiff attempts to transform his Complaint from one wherein the failure to do rounds demonstrated knowledge of an elevated risk of harm to one where the failure to do rounds was the actual act of deliberate indifference that caused Plaintiff's injuries. "[A] plaintiff cannot amend his complaint through argument made in his brief in opposition to the defendant's motion for summary judgment. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)." *Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013) (citation modified). Because Plaintiff has not moved to amend his Complaint, the Court will only consider the factual record and the Motion as it concerns the claims actually alleged in his Complaint. The Court will not consider facts that are irrelevant to the claims described in Plaintiff's Complaint, nor will it consider legal arguments inapplicable to Plaintiff's failure to intervene theory of liability.

Foulks essentially acted as VSP's warden at night and was not assigned to a single dormitory. (*Id.*)

The G-2 dormitory ("G-2") is a supportive living unit for inmates with a mental health level III status. (Doc. 23-1 ¶ 5). It is not a lockdown unit, meaning inmates can leave their cells and interact with each other during the day. (*Id.*) A mental health III designation means that the men in G-2 had "a tenuous mental status that is easily overwhelmed by everyday pressures, demands, and frustrations resulting in the following: disorganization, impulsive behavior, poor judgment, a deterioration of emotional controls, loosening of associations, delusional thinking, and/or hallucinations." (Doc. 27-1 at 2–3). At night, G-2 is placed on lockdown, meaning inmates are securely locked in their cells. (Doc. 23-1 ¶ 8). Doors in G-2 have two types of locking mechanisms: a manual sliding bolt on the outside of the cell and an electronic lock. (*Id.* ¶ 10). The electronic lock is controlled from the control booth and the manual sliding bolt is secured at night so that inmates cannot leave their cells if the electronic lock malfunctions. (*Id.*) When taking G-2 off lockdown for the night, the line officer first walks through the dormitory and undoes each cell's manual sliding bolt. (*Id.* ¶ 11). The line officer would then return to the control booth and open all the electronic locks at once. (*Id.*)

On October 18, 2022, Plaintiff had been assigned to G-2 for nine months and with the same cellmate, Paul Bettencourt, for four weeks at that time. (Doc. 23-1 ¶ 18). Plaintiff was not a member of a gang while housed at VSP and had never requested protective custody while in G-2. (*Id.* ¶ 19). Prior to October 18, 2022, Plaintiff had no issues with any inmates in G-2. (*Id.* ¶ 20). In October 2022, line officers were assigned to multiple dormitories at night due to staffing shortages. (*Id.* ¶ 22). On the night Plaintiff was attacked, Moody was assigned to two buildings and split his time between the two. (*Id.* ¶ 23). Normally, Moody was assigned to lockdown dormitories, which G-2 was not. (*Id.*).

Moody testified that he did his rounds in G-2 the night that Plaintiff was attacked, but also said that he would have documented the counts and rounds in his logbook. (Doc. 27-1 ¶ 25). Plaintiff contends, and presents evidence, that Moody's logbook was empty for many days and that the logbook fails to corroborate Moody's testimony. (*Id.* ¶ 24). As a result, there is a genuine dispute of material fact as to whether Moody did his rounds in G-2 the night that

Plaintiff was attacked. For the purposes of the Motion, the Court will make the reasonable inference that Moody did not do his rounds in G-2 the night Plaintiff was attacked.

Sometime in the hours leading up to Plaintiff being attacked, inmates Brejon Nabors, Richard Parker, and Brandon Sayre escaped their cells and attacked inmate Briones Wofford. (Doc. 27-1 ¶ 8). Plaintiff asserts this attack happened because VSP officials did not secure the deadbolt locks. (*Id.*) Parties disagree on the exact timing of Wofford being attacked, but it was some time before Plaintiff was attacked. (Doc. 27-2 ¶ 48). The Parties disagree on the extent of Wofford's injuries, and Plaintiff's citation to record evidence is unavailing. (Doc. 32-1 ¶ 49). The most the Court can glean concerning Wofford's injuries comes from Defendant Kern's deposition wherein she read from her incident report, stating, "Offender Wofford was escorted to medical due to having a cut on his chin and his forearm." (Doc. 27-12 ¶ 112).

Concerning the October 18, 2022 attack ("the attack"), Plaintiff's cellmate, Bettencourt said that "men were outside of our cell at about the same time that the doors were unlocked from the control room booth in between G-1 and G-2. You can see directly from the control booth into the dorm, including where the men were outside of the cell I shared with Mr. Humphrey. It was obvious that these men were at the door to do harm."[3] (Doc. 27-1 ¶ 27). Moody testified that he looked from the control room before opening the doors. (*Id.*) Plaintiff asserts, and cites to relevant deposition testimony, that Foulks and Moody both knew there were men "running around" the dorm before the doors were unlocked electronically. (*Id.*) Plaintiff asserts that Foulks then said "Okay. Fine. Open the door." (*Id.*)

After G-2 was taken off nighttime lockdown, three men: Nabors, Parker, and Syre, attacked Plaintiff. (Doc. 23-1 ¶ 34). The attackers carried bladed weapons, including a large hatchet or axe. (Doc. 27-1 ¶ 28). Bettencourt said that Nabors had been brandishing the hatchet or axe in the open area of the dorm for weeks. (Doc. 27-1 ¶ 28). The attackers stabbed Plaintiff eight times, mostly in his back. (Doc. 27-2 ¶ 60). The wounds were so severe that

[3] Defendants argue the Court should not credit Bettencourt's declaration because it contradicts Plaintiff's own sworn deposition testimony. (Doc. 32 at 5). The Court credits Bettencourt's testimony because it must make reasonable inferences in Plaintiff's favor. It is reasonable for the Court to infer that Plaintiff's recounting of the events the night he was stabbed until he nearly died might be inaccurate and that his cellmate's testimony may be, at times, more reliable. Indeed, the very moments preceding Plaintiff's near-death stabbing are those most likely to be unreliable. Accordingly, the Court does not find contradictions from his testimony concerning those moments dispositive. These contradictions may of course be raised again before the factfinder at trial, where they may be more persuasive.

Plaintiff held his intestines in his hands. (*Id.* ¶ 61). Plaintiff ran from his cell to the sallyport, which Moody opened. (Doc. 23-1 ¶ 40). Plaintiff was at the VSP medical unit within three minutes of Moody opening the sallyport and at the hospital ten to fifteen minutes after that. (*Id.* ¶ 44).

## IV. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment as to Counts I and II of Plaintiff's Complaint. (Doc. 23). In his Response, Plaintiff "elects to drop Count II . . . and all his claims against Defendant Dominiak nee Kern." (Doc. 27 at 3). As a result, the Motion as to Count II and Defendant Kern is **GRANTED**.

### A. Failure to Protect

The Eighth Amendment forbids the "inflict[ion]" of "cruel and unusual punishments." U.S. Const. amend VIII. Accordingly, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). But "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials." *Id.* at 834 "[A] prison official violates the Eighth Amendment only when two requirements are met." *Id.* First, "the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* Second, "a prison official must have a 'sufficiently culpable state of mind'"—i.e., "deliberate indifference." *Id.* Defendants do not dispute that Plaintiff's injuries were sufficiently serious. The Court therefore assumes for the purposes of this motion that Plaintiff's injuries were sufficiently serious.

Defendants argue that Plaintiff's failure to protect claim fails because there is no evidence that Defendants acted with deliberate indifference before or during the attack on Plaintiff and because they responded reasonably to the risk once they became aware of it. (Doc. 23-2 at 11–13). Defendants propose that the Court rely on the failure to protect test described in *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013). (Doc. 23-2 at 10). After *Goodman*, however, the Eleventh Circuit, sitting en banc in *Wade v. McDade*, "clarif[ied] our inconsistent precedent" on deliberate indifference. 106 F.4th 1251, 1254 (11th Cir. 2024). And since *McDade*, the Eleventh Circuit has used the test described in *McDade*, not *Goodman*, to decide failure to protect claims. *McClinton v. Warden, Baldwin State Prison*, 172 F.4th 1276, 1282 (11th Cir. 2026). The Court will therefore consider the Defendants' arguments in the

context of the deliberate indifference standard described in *McDade*, while noting that Defendants' arguments following *Goodman* entirely track with *McDade*.

"[A] deliberate-indifference plaintiff must prove that the defendant acted with 'subjective recklessness as used in the criminal law.'" *McDade*, 106 F.4th at 1255. (quoting *Farmer*, 511 U.S. at 839). "[I]n order to do so, the plaintiff must show that the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm." *Id.* But if Defendants show that they "'respond[ed] reasonably' to a risk, even a known risk, [they] 'cannot be found liable' under the Eighth Amendment." *Id.* (quoting *Farmer*, 511 U.S. at 844, 837).

Defendants argue they did not subjectively know the attackers had homemade weapons before the attack, that they attacked Wofford earlier in the morning, and that the attackers were roaming the G-2 dormitory before taking it off lockdown for breakfast. (Doc. 23-2 at 11). But Plaintiff does put on evidence, Bettencourt's sworn declaration, showing that Defendants knew there were men wandering freely that morning before the dormitory was taken off lockdown. (Doc. 27-1 ¶ 27). And Plaintiff puts on evidence, also Bettencourt's sworn declaration, that the Defendants knew Nabors had a hatchet for some time before the attack. (Doc. 27-1 ¶ 28). "[T]he subjective factor, deliberate indifference, should be determined in light of the prison authorities' current attitudes and conduct." *Wade v. McDade*, 106 F.4th 1251, 1259 (11th Cir. 2024). "The Court's focus" is "on whether the official knew that his own conduct—again, his own acts or omissions—put the inmate at risk." *Id.* The Court can infer, based on Plaintiff's evidence, that the Defendants knew the three men were freely roaming the dormitory, gathered outside Plaintiff's cell, and that Nabors had a hatchet. In this context, a reasonable jury could find that Defendants knew the decision to open the electronic locks put Plaintiff at substantial risk of serious harm.

Defendants next argue that their failure to follow GDC policies, specifically those about securing the manual sliding bolts and doing rounds, do not establish deliberate indifference. As discussed above, the Court reads the Complaint's allegations concerning failure to follow GDC policies not as the deliberately indifferent act itself, but rather evidence that Defendants knew of the elevated risk posed to Plaintiff by the three men outside his dormitory and Defendants' decision to open the electronic lock. (*See* Doc. 1 ¶ 34–35). For the

sake of argument the Court notes that Plaintiff has put on evidence that the mental instability of inmates in the G-2 dormitory could mean that Defendants' failure to follow GDC policies constituted deliberate indifference in itself. But the Court reads the failure to follow GDC policies as further evidence that Defendants knew of the dangerous situation brewing the morning of the attack. A reasonable jury could find that because the Defendants knew they failed to secure the manual bolt and that they had not routinely checked on the security of the dormitory, the Defendants subjectively knew that the three men outside of Plaintiff's cell posed a significant risk. A reasonable jury could find that by opening the electronic lock, Defendants knowingly disregarded that risk and therefore acted with subjective recklessness as used in the criminal law.

Defendants argue that their actions during the attack do not constitute deliberate indifference because they opened the sallyport for Plaintiff when he ran to it, wheeled him to the medical unit within three minutes of opening the sally port, and EMTs took him to the hospital within ten to fifteen minutes of Plaintiff reaching the medical unit. (Doc. 23-2 at 12–13). While Plaintiff disputes this timeline in his Response to Defendants' Statement of Material Facts, (Doc. 27-1 at 20), he dedicates none of his Response to Defendants' Motion for Summary Judgment to substantively refuting Defendants' argument. (*See* Doc. 27). As a result, the Court assumes that Plaintiff has waived his arguments concerning the speed with which Defendants responded to the attack.

Defendants argue that they responded reasonably to the risk once they became aware of it, creating an independent reason to grant summary judgment in their favor. (Doc. 23-2 at 13). To make this argument, Defendants cite to the previously-mentioned speed with which they attended to Plaintiff after the attack. Indeed, if Defendants show that they "'respond[ed] reasonably' to a risk, even a known risk, [they] 'cannot be found liable' under the Eighth Amendment." *McDade*, 106 F.4th at 1255 (quoting *Farmer*, 511 U.S. at 844, 837). Defendants' argument takes for granted that the Court finds they had no knowledge of the risk until the attack began. But the Court has already found that Plaintiff has demonstrated sufficient evidence, for the purposes of summary judgment, that Defendants knew about the risk before they opened the electronic lock. And the Court found that the decision to open the electronic lock with knowledge of that risk would constitute subjective recklessness as used in the

criminal law. Because Defendants responded to the risk recklessly, the Court cannot as a matter of law find them to have responded to the risk reasonably. As a result, Defendants' reasonable actions after the attack cannot immunize them from liability for their reckless actions before the attack.

**B. Qualified Immunity**

Defendants argue they are entitled to qualified immunity as to Plaintiff's Eighth Amendment claim because their conduct did not violate any clearly established law. (Doc. 23-2 at 15–17). Qualified immunity shields government officials from civil liability to the extent their conduct "does not violate clearly established statutory or constitutional rights" about which a reasonable official would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine balances two key interests: "(1) the need to hold public officials accountable when they exercise power irresponsibly and (2) the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* (enumeration added).

At the first step, an official must establish that he performed a discretionary function when the alleged constitutional violation occurred. *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004) (quotation marks omitted). A discretionary function is "a legitimate job-related function (that is, pursuing a job-related goal)" pursued through means that were within an official's power to employ. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265–66 (11th Cir. 2004) (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1185 n.14 (11th Cir. 1994)). The individual defendants assert that they were engaged in a discretionary function when the alleged constitutional violation occurred (Doc. 23-2 at 17), and Plaintiff does not disagree. (*See* Doc. 27). As a result, the Court finds for instant purposes that Defendants were performing a discretionary function when the alleged constitutional violation occurred.

At the second step, the burden shifts to Plaintiff to defeat qualified immunity. *See Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (citing *Mikko v. City of Atlanta*, 857 F.3d 1136, 1319 (11th Cir. 2017)). To do so, Plaintiff must meet two requirements. *See Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (citing *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199–1200 (11th Cir. 2007)). First, Plaintiff must sufficiently allege a constitutional violation. *Echols*, 913 F.3d at 1319 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Second, Plaintiff must show

that his violated right was "clearly established at the time[.]" *Id.* (quotation marks omitted) (quoting *al-Kidd*, 563 U.S. at 735).

To defeat qualified immunity, Plaintiff must show the "right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). The Defendants argue that there is no binding decision "that clearly establishes that their conduct as shown by the evidence in this case amounts to a violation of law." (Doc. 23-2 at 17). But "a broad statement of principle" controls here. *Prosper v. Martin*, 989 F.3d 1242, 1251 (11th Cir. 2021). The underlying constitutional right is the right to be free from violence at the hands of other inmates. "[I]t is well settled that a prison inmate has a constitutional right to be protected from the constant threat of violence and from physical assault by other inmates." *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986). And "[t]he Supreme Court says that prison officials will be liable for violating the Eighth Amendment when they are deliberately indifferent to the substantial risk of serious harm to inmates." *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1027 (11th Cir. 2001) (citing *Farmer*, 511 U.S. 825). The case law is clear and Plaintiff has shown the right was clearly established at the time of the alleged violation.

## V. CONCLUSION

Because Plaintiff waived Count II of his Complaint and all claims against Kern, Defendants' Motion for Summary Judgment is **GRANTED**, as to Count II of Plaintiff's Complaint and all claims against Kern. Because Plaintiff has demonstrated, for the purposes of summary judgment, sufficient evidence that Defendants were subjectively aware that their own conduct put Plaintiff at substantial risk of serious harm. Accordingly, Defendants' Motion for Summary Judgment is **DENIED**, as to Count I of Plaintiff's Complaint as against Moody and Foulks.

**SO ORDERED**, this 25th day of August 2026.

**/s/ W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**